**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TIMOTHY CARNESS AUTRY,
Plaintiff-Appellant,

v.

No. 96-6112

PHYLLIS B. WOODS; RICHARD HEATH;
CHARLES G. RAYNOR, SR.,
Defendants-Appellees.

TIMOTHY CARNESS AUTRY,
Plaintiff-Appellant,

v.

No. 96-6254

PHYLLIS B. WOODS; RICHARD HEATH;
CHARLES G. RAYNOR, SR.,
Defendants-Appellees.

TIMOTHY CARNESS AUTRY,
Plaintiff-Appellant,

v.

No. 96-6378

PHYLLIS B. WOODS; RICHARD HEATH;
CHARLES G. RAYNOR, SR.,
Defendants-Appellees.

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Chief District Judge.
(CA-94-40-5-CT-F)

Submitted: May 16, 1996

Decided: February 4, 1997

Before RUSSELL, LUTTIG, and WILLIAMS, Circuit Judges.

_____

Sanctions imposed by published per curiam opinion.

_____

**COUNSEL**

Timothy Autry, Appellant Pro Se. Jane Ray Garvey, OFFICE OF
THE ATTORNEY GENERAL, Raleigh, North Carolina, for Appel-
lees.

_____

**OPINION**

PER CURIAM:

Petitioner Timothy Autry has been incarcerated since 1986 for his
commission of first degree rape. During commission of this offense,
Autry impersonated a police officer, "arrested" and handcuffed
sixteen-year-old Nena Charlene Faircloth, drove her to a secluded
location in the woods, and then repeatedly raped and sodomized her.
Since his incarceration, Autry has filed at least fifteen actions in dis-
trict court, most of them pursuant to 42 U.S.C.§ 1983. Autry has
appealed to this circuit ten times since 1987. None of Autry's claims
has ever proved to have merit and many have been labeled by this
court and the district court as "frivolous." Because addressing Autry's
repeated, frivolous claims have placed a significant burden on this
court, as well as on the district court, we ordered Autry on May 16,
1996, to show cause why he should not be sanctioned for filing this
most recent section 1983 claim. Having reviewed his response, we
hereby impose sanctions upon Autry pursuant to Federal Rule of
Appellate Procedure 38.

Nearly half of Autry's lawsuits have been transparent personal
attacks on female correctional, law enforcement, or judicial employ-
ees. In most of these complaints, Autry has alleged, sometimes in
graphic detail, that he and the defendant had a sexual or romantic

2

relationship. In some of his complaints, Autry has claimed that female magistrates treated him harshly because of his relationships with them. See, e.g., Complaint, 84-1059-CRT (E.D.N.C. 1984) (accusing magistrate of using "her position . . . in an unethical way, and by way of self-satisfaction of having a sexual relationship with [Autry]"); Complaint, 84-1062-CRT (E.D.N.C. 1984) (alleging that the magistrate set an improper bond "due to [Autry's] involvement with [the magistrate]"). In one case, for example, Autry alleged that a female magistrate was in love with him and, as a result, had written him several letters in which she supposedly claimed to be involved in "a Terrorist Group called the Omega Seven," confessed to sending a mail bomb that killed a United States Circuit Judge, and threatened to kill her husband. Complaint, Autry v. Dahnke , 90-165-CRT (E.D.N.C. 1990). The district court dismissed Autry's complaint, terming it "frivolous." Autry v. Dahnke, 90-165-CRT at 2 (E.D.N.C. 1990). Autry appealed the district court's decision, and we dismissed the appeal, holding that Autry's case was meritless. See Autry v. Dahnke, No. 90-6074 (4th Cir. Aug. 14, 1990) (unpublished).

In still other lawsuits, Autry has accused female police and correctional officers of sexual misconduct. See, e.g., Complaint, 88-232-CRT, (E.D.N.C. 1988) (making allegations, inter alia, of prostitution, narcotics possession, and murder against a female correctional officer); Complaint, 86-874-CRT (E.D.N.C. 1986) (alleging that a female officer had given Autry nude pictures of herself, and worked "as a call girl on the weekends").

The claims in the present case are strikingly similar to those found in Autry's previous actions. Here, Autry brought a section 1983 claim against the prison warden, alleging that the female warden engaged in various sexual escapades with Autry and then offered him money to kill her husband. A representative paragraph from Autry's complaint reads as follows:

> After entering defendant Wood's office, she placed a Brown chair diagonally across her desk and asked me to have a seat. Defendant woods then moved her chair, so she would be facing me, and then placed her right hand on my left thigh. Before I could respond Defendant woods ran her hand along my thigh up to my groin area and started fondling my

3

penis. Defendant woods began to unbutton my pants and withdraw my penis and then place her mouth over my penis and performed oral sex on me. After ejaculating defendant Woods Re-Buttoned my pants and stated "I have often fantasized about having sex in my office." She then went on to say that I could have a Blow-Job and more if I would help her do <u>something</u>."

. . .

[At a subsequent encounter Woods] allowed me to have vaginal intercourse with her. [Woods later] agreed to have anal intercourse with me. As I started to penetrate her she cried out "please don't your tearing me open," so I stopped. Defendant Woods stated that she could not take all (9) Nine Inches. After we put on our clothes Defendant Wood said again how Important it was to have her husband killed.

Complaint, <u>Woods</u> v. <u>Autry</u>, No. 5:94 Civ. 40-F at 9, 11 (E.D.N.C. 1995) (errors and emphasis in original). Since the filing of Autry's petition, numerous persons have filed affidavits with the court establishing the falsity of the allegations. Two inmates, for example, have come forward on separate occasions and, through written letters or oral communications to defendant Woods, have related that Autry told them that his attack on Ms. Woods stems from a desire to have her fired or to force her to resign. <u>See</u> J.A., In Camera Exhibits A & B. Autry's actions in this case appear especially frivolous and malicious in light of the fact that, in documents filed in North Carolina state court in two previous civil lawsuits, Autry has graphically alleged that the defendant in this case had sexual intercourse with three correctional officers, her supervisors, various unnamed inmates, and had a lesbian affair with a female staffer. <u>See</u> J.A. Vol. II, No. 50 at 2.

Notwithstanding the repeated warnings of both the district court and this circuit, Autry has continued to abuse the legal process by invoking that process in order to sexually harass the women within the legal system with whom he comes into contact. On May 16, 1996, this court ordered Autry to show cause why sanctions should not be entered against him for the filing of this suit, thereby providing him

4

with "notice from the court and reasonable opportunity to respond." F.R.A.P. 38. Having reviewed appellant's response to our order, we now conclude that the appeal was indeed "frivolous," and therefore impose upon Autry the following sanctions. In lieu of particularized fees and costs, we award the amount of $500 to the appellees, as we have frequently done in similar circumstances. See, e.g., Peeples v. Commissioner of Internal Revenue, No. 87-1053 (4th Cir. Sept. 23, 1987) (unpublished); Leining v. Commissioner, No. 86-1253 (4th Cir. July 21, 1987) (unpublished); United States v. Bowser, No. 86-1241 (4th Cir. April 22, 1987) (unpublished); United States v. Wissig, No. 86-1188 (4th Cir. Dec. 29, 1986) (unpublished); Chapman v. Egger, No. 86-2151 (4th Cir. Oct. 21, 1986) (unpublished); Jensen v. United States, No. 86-1504 (4th Cir. June 25, 1986) (unpublished), motion for accounting and cert. denied, 479 U.S. 924 (Oct. 20, 1986). This money shall be payable to Phyllis B. Woods in her official capacity. Additionally, following a practice adopted in one of our sister circuits, we enjoin appellant from filing any further civil appeals in this court until these monetary sanctions are paid, and unless a district court judge certifies that his claim is not frivolous. See Smith v. McCleod, 946 F.2d 417, 418 (5th Cir. 1991) (ordering that petitioner "be barred from filing any further appeals in this court until (1) the sanctions awarded by this court and the district court are fully paid; and (2) a district court certifies his appeal as having some arguable merit"); cf. Shief v. Kakita, 116 S. Ct. 1311 (1996) (directing "the Clerk not to accept any further petitions for certiorari from[appellant] in noncriminal matters unless he pays the docketing fee required by [Supreme Court] Rule 38 and submits his petition in compliance with [Supreme Court] Rule 33.1"); Jones v. ABC-TV, 116 S. Ct. 870 (1996) (same); Attwood v. Singletary, 116 S. Ct. 769 (1996) (same); Whitaker v. Superior Court of California, San Francisco County , 115 S. Ct. 1446 (1995) (same).

It is so ordered

5